UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY,<br><br>      Plaintiff,<br>  v.<br><br>TRAVELERS CASUALTY AND<br>SURETY COMPANY,<br><br>      Defendant. | CASE NO. 2:22-cv-01036-LK<br><br>ORDER DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT |

This matter comes before the Court on Plaintiff Argonaut Insurance Company's Motion for Leave to Amend the Complaint. Dkt. No. 39. For the following reasons, the Court denies Argonaut's motion.

### I. BACKGROUND

Argonaut is an Illinois corporation that issues commercial general liability policies. Dkt. No. 14 at 1, 3. Argonaut issued a commercial general liability policy to the University of Washington, effective November 17, 1971 through November 17, 1972, which was then extended to July 1, 1973. *Id.* at 2. This is the only liability policy that Argonaut issued to the University

ORDER DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT - 1

during the 1959 to 1978 period, and it did not issue any excess or umbrella liability policies to the University during this time. *Id.* Argonaut's policy has a limit of $1 million per occurrence. *Id.*

Defendant Travelers Casualty and Surety Company, a Connecticut corporation licensed to sell insurance and transact business in Washington, issued a series of commercial general liability policies to the University beginning in 1959 and continuing through 1978. *Id.* at 2–3. These policies covered the entire 1959 to 1978 time period, except for the 20-month period during which the University was insured under Argonaut's policy. *Id.* From 1959 until 1962, the per occurrence limits on the policies issued by Travelers was $500,000; this limit increased to $1 million per occurrence for the policies issued from 1959 to 1978. *Id.*

In 1996, the Washington State Department of Ecology ("Ecology") notified the University of its status as a potentially liable party under the Model Toxics Control Act ("MTCA"), Chapter 70A.305 of the Revised Code of Washington. Dkt. No. 39 at 2; Dkt. No. 41 at 2. The next year, Ecology and the University negotiated Agreed Order No. DE 97HW-S238, whereby the University agreed to accept its liability under MTCA and to investigate and remediate releases of hazardous substances to soil and groundwater on-campus and migrating off-campus. *See* Dkt. No. 40-2 at 4–30. Ecology and the University amended the Agreed Order in March 2013, Dkt. No. 40-3 at 2–18, and replaced it with Agreed Order DE 11081 in May 2016, Dkt. No. 40-4 at 2–32. Both Agreed Orders defined the cleanup area as a single "site" comprising multiple property parcels owned and designed by the City of Tacoma, Washington to be the University's Tacoma campus; these parcels include several "areas of concern." Dkt. No. 40-2 at 8; Dkt. No. 40-4 at 5, 7.[1]

---

[1] Both Agreed Orders similarly define "areas of concern" as areas of the site where a release of hazardous substances and dangerous constituents (including dangerous waste) "has occurred, is occurring, is suspected to have occurred, or threatens to occur." Dkt. No. 40-2 at 5; Dkt. No. 40-4 at 5; *see also* Dkt. No. 40-2 at 27; Dkt. No. 40-4 at 31.

ORDER DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT - 2

Beginning in 1984, the University started notifying Travelers of its environmental property damage claims. Dkt. No. 41 at 2. In 1997, the University and Travelers began to explore a global settlement to resolve issues of potential insurance coverage of the University's existing and future environmental claims. *Id.* A settlement agreement was finalized and executed in June 1999. *Id.* It provided for an initial lump-sum payment under the relevant Travelers policies and the creation of a $5 million fund that would be used to pay for the University's environmental claims without being subject to Travelers' coverage defenses or other limitations under the policies. *Id.* at 2–3. In return, the University released Travelers from all environmental damage claims (as defined by the settlement agreement), while otherwise maintaining the policies in full force and effect for all other types of claims. *Id.*

Pursuant to the 1999 settlement agreement, the University tendered for payment invoices for the cleanup of various properties, including some of the areas of concern at its Tacoma site. *Id.* On August 1, 2006, the University sent Travelers a letter stating that Ecology had informed it "that groundwater underneath and/or adjacent to and/or affected by the [University's] Tacoma Campus could be contaminated by the presence of an underground plume of contamination which either originated from the properties that constitute the Tacoma Campus or was contributed to by contamination from these properties." Dkt. No. 40-2 at 2. The University represented that it "may be obligated to take remedial action to cleanup this plume or take other action to prevent contamination to groundwater as a result of the movement of the plume," and stated that "[t]he purpose of th[e] letter is to provide [Travelers] with notice that the University may be forced to make expenditures that would be covered by" the 1999 settlement agreement. *Id.* at 2–3.

After the University exhausted the $5 million allocation to environmental damage claims under the 1999 settlement agreement, the University sent a letter to Argonaut on July 25, 2014 stating that it would be "looking to [its] other carriers," including Argonaut, "for satisfaction of

ORDER DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT - 3

the remaining and ongoing claims." Dkt. No. 41 at 3. Argonaut avers that it has, to date, paid or agreed to pay approximately $9.5 million in claim expenses, inclusive of defense costs and the settlement amount, on behalf of the University in response to its claims, and continues to pay defense costs, while Travelers has not paid any claim expenses. Dkt. No. 14 at 5–6.

On July 26, 2022, Argonaut filed its original complaint, asserting claims of contribution, indemnity, and/or subrogation against Travelers and seeking monetary relief. Dkt. No. 1 at 6.[2] Argonaut amended its complaint as a matter of course on August 30, 2022, Dkt. No. 13, and amended it again on September 7, 2022, modifying its cause of action to be one of equitable contribution and/or equitable indemnity, Dkt. No. 14 at 6, while removing any references to declaratory relief, *see generally id.*

The Court initially set trial for November 20, 2023, with a January 9, 2023 deadline for filing amended pleadings. Dkt. No. 18 at 1. After this deadline passed, the parties stipulated to several continuances of the trial date and remaining pretrial deadlines, which were all granted in substantive part; however, the parties never moved to extend the deadline for filing amended pleadings. *See* Dkt. Nos. 24–25, 27–28, 29, 32–34. Oral discovery was completed on August 14, 2024, the deadline to file all dipositive motions and motions challenging expert witness testimony is September 13, 2024, and trial is scheduled for January 13, 2025. Dkt. No. 34 at 2.

Argonaut filed the instant motion on August 2, 2024, seeking leave to amend its complaint to assert additional factual allegations, to amend its equitable contribution/equitable indemnity claim, and to add a claim for declaratory judgment that Travelers must equitably contribute to past, ongoing, and future payments by Argonaut to or on behalf of the University related to its claims.

---

[2] Argonaut states in the introduction of its original complaint that it is "seeking . . . a declaratory judgment," *id.* at 1, and identifies its cause of action as "[d]eclaratory judgment" on its civil cover sheet, Dkt. No. 1-1 at 1; however, it does not include any request for declaratory relief in its prayer for relief. Dkt. No. 1 at 6.

Dkt. No. 39 at 1–2, 5–7; *see also* Dkt. No. 40-1 at 4–10. Travelers filed an opposition to Argonaut's motion on August 19, 2024. Dkt. No. 41 at 1, 5.

## II. DISCUSSION

### A. Legal Standards Under Rule 15 and 16

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). A schedule modification is appropriate only if the amended pleading deadline could not be met despite the diligence of the moving party. *Id.* Carelessness is incompatible with a finding of diligence. *Id.* The Court's inquiry thus focuses on the moving party's reasons for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id.*; *accord Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

In assessing diligence, the Court may consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). When that is the case, the Court may deny leave to amend. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). The Court may likewise deny leave to amend if the moving party knew of the facts and theories at issue sufficiently in advance of the deadline to timely assert them. *See, e.g.*, *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 816–17 (9th Cir. 2020) (party that moved for leave to amend three months after the amended pleadings deadline failed to exercise diligence

because it could have asserted its proposed claims before that deadline); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (denying leave to amend where plaintiff's motion "came several months after the stipulated deadline for amending or supplementing the complaint" and "[n]othing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline").

**B.    Argonaut Was Not Diligent**

As discussed above, Argonaut seeks leave to amend its complaint "to assert factual allegations that conform to evidence shared with Travelers," to add an equitable contribution and/or equitable indemnity claim for future costs that Argonaut will pay in response to the claims at issue (in addition to its existing claim for past and ongoing costs), and to add a claim for a declaratory judgment that "Travelers must equitably contribute . . . to past, ongoing, and future payments by Argonaut to or on behalf of" the University for costs related to the claims at issue. Dkt. No. 39 at 2, 5–7; Dkt. No. 40-1 at 4–10.

As noted above, the deadline for the parties to amend pleadings in this case—January 9, 2023—has long passed, Dkt. No. 18 at 1, the September 13, 2024 dispositive motions deadline is imminent, and trial is scheduled for January 13, 2025, Dkt. No. 34 at 2, 120 days after dispositive motions are due, Dkt. No. 35-1 at 2–3 ("[T]he Court sets the dispositive motion deadline 120 days prior to trial to allow sufficient time following the noting date to issue a decision on the motion prior (ideally, at least three weeks prior) to the deadline for motions in limine (due 35 days before trial).").

Argonaut argues that it should be granted leave to amend under Rule 15 because Travelers will not be prejudiced by the amendment. Dkt. No. 39 at 6–7. However, because Argonaut's motion implicates both Rules 15 and 16, the Court does not consider whether amendment would be proper under Rule 15 unless Argonaut first satisfies Rule 16's more stringent "good cause"

requirement. *Mammoth Recreations*, 975 F.2d at 608; *accord LifeLast, Inc. v. Charter Oak Fire Ins. Co.*, No. C14-1031-JLR, 2015 WL 12910683, at *2 (W.D. Wash. July 6, 2015). Argonaut does not make it past that hurdle.

Argonaut makes no effort to address its diligence (or lack thereof) in seeking amendment until its reply brief. *See generally* Dkt. No. 39; Dkt. No. 43 at 3. There, Argonaut asserts in conclusory fashion that it "has diligently conducted and responded to discovery and could not have moved any sooner for leave to amend its Complaint to conform to evidence in the record." Dkt. No. 43 at 3. It avers that "[a]s soon as counsel for Argonaut had finished deposing Travelers' witnesses but before Travelers' counsel had deposed any of Argonaut's witnesses, Argonaut moved for leave to conform its Complaint and clarify its relief." *Id.* at 3. But Argonaut does not explain *why* it "could not have moved any sooner" than the eve of dispositive motions to "clarify" its relief. Nothing in its briefing suggests that the impetus for its amendments came from late-breaking discovery. Indeed, the parties have had nearly two years to complete discovery, facilitated by four continuances of the discovery deadlines. Dkt. Nos. 25, 28, 32, 34. Written discovery was completed ten months ago in November 2023, and oral discovery was completed on August 14, 2024. Dkt. Nos. 32, 34. Argonaut does not explain what new evidence surfaced in oral discovery that prevented it from seeking leave to its complaint any sooner.

Notably, Travelers has asserted counterclaims against Argonaut, Dkt. No. 15 at 9, and even if the Court had granted Argonaut leave to amend the day of the noting date of its motion (August 23, 2024), the deadline to complete related pleadings (Travelers' answer and counterclaims and Argonaut's answer to the counterclaims) would not occur until after the deadline for dispositive motions. In fact, Travelers has already filed a motion to dismiss and a motion for partial summary judgment, Dkt. Nos. 47, 50, and Argonaut has already moved for partial summary judgment, Dkt. No. 45, without addressing whether its motion would be mooted by the new round of pleadings it

ORDER DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT - 7

seeks to introduce. Travelers' motion to dismiss and Argonaut's motion for partial summary judgment (unsurprisingly) contain numerous citations to, and arguments regarding, the operative pleadings in the case. Absent any explanation for why Argonaut could not have sought leave to amend before the eleventh hour, the Court will not countenance the potential disruption to its docket—and related prejudice to Travelers—that would result from such belated amendments.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Argonaut's motion for leave to file a third amended complaint. Dkt. No. 39.

Dated this 6th day of September, 2024.

Lauren King
United States District Judge